## Leidy Estate (No. 2)

*Waters, Fleer, Cooper & Gallagher* and *Pepper, Hamilton & Scheetz*, for accountant.

*High, Swartz, Roberts & Seidel, Dechert, Price & Rhoads, Smith, Aker, Grossman & Hollinger, Schnader, Harrison, Segal & Lewis, John F. Solomon, Jr.* and *Benjamin R. Neilson*, for remaindermen.

TAXIS, P. J., January 24, 1966.—The account is filed because of the death of Cornelia Carter Cheston, income beneficiary, on June 16, 1965, and as a consequence of her death, the trust now terminates and principal is distributable.

The account shows a net balance of principal of $236,920.36, with a market value as of July 28, 1965, of $464,303.72, composed of the securities set forth on page 1 of the account, income of $2,068.31, and cash. . .

An interesting and important question has been presented by the fact that the Fidelity-Philadelphia Trust Company, surviving trustee, has requested a terminal commission of $12,000.

Helen Carter Leidy died February 9, 1933, leaving an estate consisting, inter alia, of $326,690.73 in personal property, which was administered by her executors. Fidelity was one of the executors. Following the adjudication of the executors' account by this court, personalty in the amount of $36,628.37 was delivered to Fidelity as one of the trustees of the testamentary

trust. The executors of the estate received a commission based upon 1½ percent of $324,392.81, or, $4,865.89, for their services. Fidelity, as executor, received one half of this executors' commission.

At this juncture, it is important to note, for it is the distinguishing feature of this case, that in addition to the personal property received from the executors, the trustees received real property which had not been administered by the executors and which had not been considered in connection with the commissions paid to the executors. Thus, the real estate and the proceeds thereof did not constitute a part of the estate administered by the executors for which executors' commissions were paid, but which came directly to the trustees for administration. The case, therefore, is quite properly distinguishable from those cases under section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides that a single commission shall be deemed full compensation for services of the executor and trustee in these circumstances. The rule of double commissions or, rather, the rule against double commissions under section 45 is based on the fact that the same corpus should not be called upon to support commissions of the executors and commissions of the trustees when they are one and the same. But the rule can have no application where, as here, the commissions requested are based upon corpus which did not constitute a part of the estate administered by the executors and which, therefore, formed no basis for the payment of the executors' commissions: Williamson Estate, 368 Pa. 343, and Scott Estate, 418 Pa. 332, are, therefore, not controlling.

Upon termination of a trust, a trustee, of course, should be paid adequate commissions for the services performed, and the record on this score indicates that the net proceeds from the sale of real estate and the collection of mortgages from 1937 to 1959 amounted

to $165,602.52; that the investments acquired with these proceeds have more than doubled in value, and that the portion of corpus of this estate derived from the proceeds of sale of real estate is now represented in the present accounting by investments having a market value of approximately $330,000.

In this circumstance, the court is satisfied that this trustee has not been compensated for its services with regard to this portion of corpus derived from the sale of real estate. See Biddle Estate, 20 D. & C. 2d 184, 9 Fiduc. Rep. 527.

On the question of amount of commissions, the court has not been persuaded that any extraordinary or unusual services have been performed; that the accounting indicates that it is an estate for which a 3 percent rate would be reasonable and just. See section 985 of The Fiduciaries Act of April 18, 1949, P. L. 512, as added by the Act of July 25, 1963, P. L. 305. The court, therefore, awards to it commissions of $9,900, less any commissions heretofore received. . .

And now, January 24, 1966, this adjudication is confirmed nisi.